## Smith *v.* National Bank of Sayre, Appellant.

*Promissory note—Principal and surety—Collateral—Voluntary payment.*

In an action against a bank to recover the sum of $600 it appeared that some time prior to the suit the bank held as payee a demand note made by the plaintiffs for $2,000, and that the plaintiffs had voluntarily paid $600 cash to the bank and given a renewal note for the balance of $1,400. The plaintiffs contended and offered evidence tending to show that the real maker of the note was a contractor for whom they were merely sureties or guarantors, that the contractor was the real debtor of the bank, that the bank knew this and had taken an assignment by the contractor of $2,000 owing to the latter as collateral for the payment of the note. *Held*, that it was for the jury to determine what was the real transaction between the parties, and whether it was altogether different from that which appeared on the face of the papers as they were made.

Argued Nov. 20, 1912. Appeal, No. 231, Oct. T., 1912, by defendant, from judgment of C. P. Bradford Co., Sept. Term, 1911, No. 59, on verdict for plaintiffs in case of F. F. Smith, George F. Miller and M. R. Wright, copartners, doing business under the firm name of Smith, Miller & Wright, v. National Bank of Sayre. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit to recover $600 voluntarily paid by the plaintiffs to the defendant on account of a promissory note, signed by the plaintiffs. Before MAXWELL, P. J.

At the trial it appeared that on April 21, 1909, the following note was signed by the plaintiffs and given to the defendant.

"SAYRE, PA., Apl. 21, 1909.          $2,000,00.
                                    "No. 8236.
                              "Due Demand.

" On demand for value received we promise to pay M. H. Sawtelle, Cashier, or bearer Two Thousand Dollars and Int. at The National Bank of Sayre, Pa., without defalcation or stay of execution, and we hereby confess judgment for the above sum with costs and five per cent. added as attorney's commission for collection, waiving the benefit of all laws exempting property from levy and sale on execution and the right of inquisition on real estate.

                    " SMITH, MILLER & WRIGHT,   [SEAL.]
                              "By G. M.
" Paid Feb. 23, 1910.
" The National Bank
    of Sayre, Pa."

On February 23, 1910, plaintiffs voluntarily paid $600 on account of the note, and gave to the bank a renewal note for the balance of $1,400. The plaintiffs contended that although they had signed the note, the real maker was one J. M. Ashton, a contractor for the erection of a building for Mary Packer Cummings in Sayre, Pa.

The plaintiffs offered proof of an assignment of moneys due to Ashton on his contract which were to be applied to the payment of the note of $2,000.

The court charged in part as follows:

[The plaintiff contends that under this agreement entered into there at that time, if you find that was the agreement and that the note was given to secure a debt

of Ashton's and not of theirs, and that this assignment was given by Mr. Ashton to Mr. Sawtelle, which read as follows, or in substance: "I hereby assign to the National Bank of Sayre in payment of the note of Smith, Miller & Wright $2,000, money due on Parish House contract to be deducted from deposit of first payment received." Now it is contended that that paper was delivered to Mr. Sawtelle and that Mr. Sawtelle retained it and pinned it to the note and that it remained pinned or fastened with this note in question until the renewal note was given in the following February in 1910.   Mr. Smith and I think possibly Mr. Miller, testified that at that time, and I think it is admitted by Mr. Sawtelle, that whatever paper was given was attached to the note at the time of the February transaction in 1910.   Now if that was the nature of the transaction, then we say to you that the plaintiff in this case, if they did not know of that when they paid this $613, that this money had been in the bank deposited by Ashton, they had no knowledge on that subject and was ignorant of it and paid this money under that mistake and under the representation of Mr. Sawtelle that no such deposit had been made, and you so find, then we think the plaintiff in this case is entitled to recover $613, together with interest from the date they paid that money.] [1]

[Now the form of an assignment is immaterial so that there is a clearly expressed intention of immediate transfer of the right to the assignee.  No particular form of words or of language is necessary so far as the intention of the parties are concerned, if that appears from the paper for a present transfer of these funds then it seems to me to be such an assignment of the money coming from Mr. Ashton under this contract that it was the duty incumbent upon Mr. Sawtelle as cashier of that bank, in reasonable diligence and with proper regard for the interests of Smith, Miller & Wright, to have charged up this note or taken out the note from the money deposited by Mr. Ashton in July, 1909.   If you find that is a fact then we think the plaintiff is entitled to recover in this case.] [2]

[Now I might say further in this case that whether Mr. Ashton was the principal debtor or not, take this transaction as it appears upon the face of this note, assuming that Smith, Miller & Wright were the principals in that transaction and Mr. J. M. Ashton was simply a guarantor, if you find under this testimony as a part of that transaction, this assignment was given as testified to by the plaintiffs and accepted by Mr. Sawtelle, then whether Smith, Miller & Wright were the makers or the guarantors, it seems to the court it would be entirely immaterial if this money was deposited in the bank by Mr. Ashton, that it was the duty of Mr. Sawtelle, in view of the assignment and transaction, if you so find it, to have charged up this note to that account. If you find that to be true then we think the plaintiff would be entitled to recover $613, with interest from the time it was paid.] [3]

[Gentlemen, we come to that branch of the case, if you find that the agreement given there on April 21, 1909, was, as Mr. Sawtelle has testified, was an order and that he took that order to Mr. Hannah and he refused to accept it and he retained that order in his possession and you also find that the money was deposited in the bank by J. M. Ashton, as we have previously stated to you, the first deposit was July 12, 1909, and the other deposits following that, that if you find that to be a fact under this testimony, we think that was an equitable assignment under the law to this bank for the amount of money, the $2,000, that was due Mr. Ashton under this contract, and subsequently deposited in the bank, and if you find that to be a fact then we think it would be your duty under the facts and under the law to find in favor of the plaintiff the amount claimed here by the plaintiff, $613, and interest.] [4]

[Now, gentlemen, I am not going over the testimony in detail. It is entirely unnecessary. There are two contentions, that of the plaintiff and defendant. If you find this agreement of April 21, 1909, as testified to by Mr. Sawtelle in relation to the loan of the $2,000, and in the manner in which he stated the loan was made, that it was

a loan to Smith, Miller & Wright, and that Ashton was simply a guarantor, yet if at that time this order was given as testified to by Mr. Sawtelle and signed by Ashton, we think that would be such an equitable assignment of the amount due him under this contract as would entitle the plaintiff here to recover even in that event.] [5]

[To recapitulate, the contention here is, first by the plaintiff as to the form in which this transaction was entered into. Was it an assignment signed by Ashton, or was it an order. On the part of the defendant they claim it was an order. On the part of the plaintiff they claim it was an assignment. There is no dispute about the amount of money that went to the credit of Ashton in the bank. There is no dispute about that. So you will have little trouble on that account. Whichever way you find that matter it seems to me the plaintiff is entitled to recover and we so instruct you. We think you understand the situation. If you find for the plaintiff you say you find for the plaintiff and must figure up the interest and add to the $613, and bring in a total amount. Simply say we find for the plaintiff a certain amount.] [6]

Verdict and judgment for plaintiff for $684.65. Defendant appealed.

*Errors assigned* among others were (1–6) above instructions, quoting them, and (13) refusal of motion for judgment for defendant n. o. v.

*Rodney A. Mercur*, with him *Chas. C. Yocum*, for appellant.—The following cases control the case at bar: People's Bank of Wilkes-Barre v. Legrand, 103 Pa. 309; First Nat. Bank of Lancaster v. Shreiner, 110 Pa. 188; First Nat. Bank of Lock Haven v. Peltz, 176 Pa. 513; Farmers' Nat. Bank of West Chester v. Marshall, 9 Pa. Superior Ct. 621; Mechanics & Traders Bank v. Seitz, 150 Pa. 632; Huckestein v. Herman, 1 Walker, 92; Johnston v. Parker Sav. Bank, 101 Pa. 597.

*John C. Ingham*, with him *Frank E. Wood*, for ap-

pellees.—That order was an equitable assignment. It was drawn for a certain amount, upon a certain fund, to be paid to a certain person, for a certain purpose. It transferred the title to $2,000 of the amount that Mrs. Cummings might owe to Mr. Ashton as contractor, to the bank for the purpose of securing the plaintiffs and paying the note. The deposit thereafter by Ashton of such funds was, ipso facto, a payment of the note so far as Smith, Miller & Wright were concerned. It was then the right and duty of the bank to have immediately charged the order and note against the deposit and its failure to do so was an extinguishment of the liability of Smith, Miller & Wright: Moeser v. Schneider, 158 Pa. 412; Fett's Estate, 39 Pa. Superior Ct. 246; Nesmith v. Drum, 8 W. & S. 9; Philadephia v. Lockhardt, 73 Pa. 211; Bond v. Bunting, 78 Pa. 210; Ruple v. Bindley, 91 Pa. 296; East Lewisburg Lumber & Mfg. Co. v. Marsh, 91 Pa. 96; Beaumont v. Lane, 3 Pa. Superior Ct. 73; Caldwell v. Hartupee, 70 Pa. 74; Kuhns's Estate, 163 Pa. 438.

When collateral are placed in the hands of the creditor himself and they are lost by his negligence, the debt is extinguished: Bank of U. S. v. Peabody, 20 Pa. 454; Lyon v. Huntingdon Bank, 12 S. & R. 61.

The money having been paid under a mistake of fact plaintiffs are entitled to recover it: Girard Trust Co. v. Harrington, 23 Pa. Superior Ct. 615; Dotterer v. Scott, 29 Pa. Superior Ct. 553; McKibben v. Doyle, 173 Pa. 579.

OPINION BY HEAD, J., April 21, 1913:

At the conclusion of the trial the learned judge below directed a verdict for the plaintiffs. Upon this verdict judgment was subsequently entered and the defendant appeals.

The plaintiffs sue to recover from the defendant the sum of about $600 which they had paid. It is not denied that at the time this payment was made to the bank the latter owned and held a note dated April 1, 1909, for the sum of $2,000. This note was payable on demand. Ac-

cording to its face the present plaintiffs were the makers of that note. It is not denied that the bank paid full consideration for it and that the whole amount of that consideration was received by the plaintiffs, the apparent makers of the note. It is further an undisputed fact that after the bank had carried that note from the day of its date until February, 1910, the plaintiffs on the latter date made the payment, which they now seek to recover back, as a partial payment on account of that note and the accrued interest. At the same time they executed and delivered another note in the same form to the bank for the balance of about $1,400 and lifted the note first mentioned. On the face of the papers then the plaintiffs had voluntarily paid to the bank a portion of a debt for which they were liable and had given a new note for the balance of it. Thus far the facts furnish no foundation whatever for any recovery by the plaintiffs. Their entire case, as their own statement of claim clearly shows, rested on their ability to produce evidence to go behind the note as it was made and establish the fact that in reality they were not the makers of the note at all but only sureties or guarantors for one Ashton. Evidence for this purpose was offered and it tended in some degree at least to prove the following facts:

At the time of the transaction under investigation, Ashton had a contract for the construction of a building. The plaintiffs were his subcontractors. They had so far executed their contract that Ashton had become indebted to them in a sum in excess of $2,000. Thus far the bank was a stranger to the situation and in no way responsible to the plaintiffs for the debt that was due and owing to them. Ashton was unable to make the payment that was demanded and, as alleged, was unable on his own credit to secure any further money from the bank to which he was already indebted. The plaintiffs further offered proof that at a meeting between themselves, Ashton and the cashier of the bank, it was in fact agreed that the bank would lend $2,000 to Ashton and regard him as the

primary debtor, no difference what form the obligation might take. They further testify that the bank, for its own purposes, suggested that the note be drawn so as to show the plaintiffs the makers of it, whereas in fact they were to be but sureties or guarantors whilst Ashton in turn, who was the real maker, was to appear but in the aspect of a surety or guarantor.

The evidence further tends to establish that as part of the same transaction Ashton signed an order on the parties who were erecting the building or made an assignment of the sum of $2,000 in their hands which would be next payable to him under his contract with them. This paper could not be produced at the trial, and again parol evidence was required to enable the jury to ascertain its contents. Whatever was the real nature of that instrument may or may not be of some importance in the case. That it was given to the bank as collateral for something appears to be agreed. It is the contention of the plaintiffs that it was in fact collateral put up by the maker of a note, and that as a consequence the bank was legally obliged to so use it as to bring about the payment of the obligation by the real maker in relief of the indorsers or guarantors. It is equally clear that if that collateral was put up by the guarantor to strengthen his own guaranty, the plaintiffs would have no equity to insist that it should be used in relief of their primary obligation as the makers of the note.

In a word then, it is apparent that the controlling question in the case is the ascertainment of the real relation of the plaintiffs to the note upon which the payment was made, and that, under the circumstances most favorable to the plaintiffs, must be a question of fact depending on the oral evidence of the witnesses. Their contention is opposed by the paper itself which they executed. The fact that their position became no worse by making the note because they received the proceeds of it is to be duly considered. If it should be determined from all of the evidence that the transaction was in fact what it purported to be on the papers, it is difficult to see what stand-

ing the plaintiffs would have to recover from the bank at all. If, however, it can be made to appear by competent and sufficient evidence that, with the knowledge and assent of the bank, Ashton, notwithstanding the paper, was to be regarded as the maker of the note and that these plaintiffs were to be liable only as sureties, then it may well be that the law would require the bank to so use any collateral placed in its hands by Ashton, the real maker, as to relieve the indorsers from their secondary liability. If Ashton be found to be the real maker of the note, the paper which he signed would, in any event, be express authority for the bank to do what it was probably obliged under the law to do without the paper, viz., to charge up the note against the first deposit made by him of money from his building contract referred to in the assignment or order.

The fact that no formal demand had been made of the apparent makers of the note by the bank was a matter of no importance. The note was payable on demand and due at any time the bank chose to consider it due. A suit upon it would have been a good demand, and a charge of it up to the account of one liable for it would be likewise a good demand.

The plaintiffs will further have to confront the question whether in any event their payment was not strictly a voluntary one. There is but little evidence in the record as now made up on that subject. There is certainly nothing to show that it was made under duress actual or constructive. If it was made under such a mistake of fact as would be adequate in the law to prevent the usual consequences of a voluntary payment, there is nothing on this record to warrant the learned trial court in determining that as a question of law.

Whilst we are of opinion therefore that the learned judge fell into error in directing a verdict for the plaintiffs, it seems to us apparent also that the record was in no proper shape for the entry of a judgment for the defendant n. o. v. There was evidence which, if credible, might warrant a

jury in determining that the real transaction between the parties was altogether different from that which appeared on the face of the papers as they were made. If that be found, then the relative rights and obligations of the parties would be dependent on the transaction as it was made to appear by the evidence.

Having concluded that the case must go back for another trial, we can see no benefit in considering in detail the numerous assignments of error, most of which would not be likely to arise when the case is tried along the lines pointed out in this opinion. The first, second, third, fourth and fifth assignments to the charge of the court directing a verdict for the plaintiffs are sustained.

The judgment is reversed and a venire facias de novo awarded.